## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STEPHANIE GELDERLOOS,

       Plaintiff,                         Case No.

v.                                       Hon.

WASHTENAW COMMUNITY COLLEGE;     Mag.
ROSE BELLANCA, President of Washtenaw
Community College in her individual and
official capacities; and WILLIAM ABERNETHY,
Interim Vice President for Instruction at Washtenaw
Community College in his individual and official
capacities,

       Defendants.

_____

DAVID M. BLANCHARD (P67190)
EDWARD A. MACEY (P72939)
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, Michigan 48104
(734) 663-7550
dblanchard@nachtlaw.com
emacey@nachtlaw.com

_____

## COMPLAINT AND JURY DEMAND

SUMMARY OF ILLEGAL CONDUCT

1.      The Washtenaw Community College English Department has adopted an intentional policy of discriminating against women in its faculty hiring decisions.  Plaintiff Stephanie Gelderloos is a victim of that policy who is seeking recovery for herself to prevent future violations.  In particular, she requests injunctive relief prohibiting WCC from using sex as a factor to deprive women of faculty positions.

2.      In 2013, Stephanie Gelderloos applied for a full time faculty position after years of part-time and temporary teaching assignments at the school.  WCC administration tampered with the interview selection process for full time faculty position in order to justify hiring a less qualified male candidate.  WCC refused to hire Ms. Gelderloos because she is a woman, even though she was the most qualified applicant and even though the hiring committee unanimously recommended her to the administration for hire.  Instead, WCC hired a less-qualified, male candidate based on a motivation to increase male representation – a practice that violates state and federal law.

PARTIES AND JURISDICTION

3.      Plaintiff Stephanie Gelderloos ("Stephanie" or "Plaintiff") is a resident of Ann Arbor, Michigan in the County of Washtenaw.

4.      Defendant Washtenaw Community College ("WCC" or "Defendant") is a Michigan community college with its principal place of business in Ypsilanti, Michigan in the County of Washtenaw.

5.      Defendant Rose Bellanca is employed as the President of Defendant WCC and, on information and belief, is a resident of Washtenaw County.

6.      Defendant William Abernethy is employed as the Interim Vice President of Instruction of Defendant WCC and, on information and belief, is a resident of Washtenaw County.

2

7.      Defendants Bellanca and Abernethy are the official policymakers on decisions to hire faculty for WCC.

8.      Plaintiff brings this action to remedy violations Title IX of the United States Education Amendments of 1972, 20 U.S.C. §§ 1681–88, the Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.*, the Michigan State Constitution, Article 1 § 26, and the Equal Protection Clause of the United States Constitution.

9.      Apart from the claims raised in this Complaint, Plaintiff has also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which is still pending.  In response to the EEOC Charge, the Commission has issued a finding that there is cause to believe illegal discrimination did occur. The case is now under further review by the Department of Justice.  Upon the issuance of a "right to sue" letter by the Department of Justice, Plaintiff intends to amend her Complaint to add a claim under Title VII of the Civil Rights Act based on the same nexus of facts at issue in this action.

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a claim under a federal statute, 42 U.S.C. § 1981.

11.      Jurisdiction of the state law claim is founded upon the pendant or supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

12.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Plaintiff lives, where the Defendant's principal place of business is located, and where the events giving rise to Plaintiff's claims took place.

13.      The amount of controversy is in excess of $75,000, exclusive of interest, costs, attorney fees and punitive damages.

<u>COMMON FACTUAL ALLEGATIONS</u>

14.     Ms. Gelderloos was employed by WCC for approximately nine years as an instructor in the English Department.  She held part-time, adjunct, and temporary full-time instructor positions during her time with WCC.

15.     WCC's policies provide that, when hiring new faculty, the hiring supervisor, executive officer, or dean will appoint a selection committee to carry out the interview process. The general function of the committee is to recommend the most suitable candidate for hire.  After evaluating each candidate, the committee recommends a candidate to the administration, and the administration hires the recommended candidate.

16.     It was the previous practice of the English Department to follow these policies.

17.     When committee members agree on a top candidate, the selection committee's practice was to recommend that one candidate for hire to the Department leadership and administration.

18.     When a permanent full-time position in WCC's English Department was posted in April of 2013, Ms. Gelderloos applied and was selected for an interview.

19.     The posting listed minimal qualifications: a Master's degree in a related field, the equivalent of two years successful teaching experience, preferably at the community college level, and demonstrated experience in developing instructional materials in writing.

20.     Ms. Gelderloos exceeded these minimal qualifications with her nine years' teaching experience at WCC and her academic achievements at both the undergraduate and graduate levels.

21.     Ms. Gelderloos' first interview took place on June 18, 2013.

22.     Ms. Gelderloos received top scores from the hiring committee.

23.     According to Carrie Krantz, WCC's English Department Chair, Ms. Gelderloos'

4

teaching demonstration was by far the best demonstration the committee saw during the hiring process.

24.     Not all members of the selection committee retained interview notes

25.     WCC policy requires all selection committee members to retain notes.

26.     All members rated Ms. Gelderloos very highly.

27.     One committee member wrote "YES!!" and drew a star next to Ms. Gelderloos' name and "NO!" and "MAYBE" next to all other candidates' names.

28.     Consistent with policy and practice, Defendants' interviewing committee unanimously recommended Ms. Gelderloos to the administration for hire as the top candidate for the position.

29.     After the interviewing committee submitted their recommendation, the administration requested that the committee re-submit its recommendation to include two additional names for its consideration.

30.     The reason for changing the practice after Ms. Gelderloos was selected was that administration wanted a male candidate they were free to hire, despite Ms. Gelderloos being more qualified.

31.     Mr. Abernethy, the Interim Vice President of Instruction, and Dena Blair, the Interim Dean, interviewed Ms. Gelderloos and the two additional, less qualified candidates during second-round interviews.

32.      Defendants ultimately hired a less qualified male for the position.

33.     WCC's administration sought to hire a male candidate to increase the English Department's "diversity" and chose the hire him specifically because he is a male.

34.     Mr. Abernethy has repeatedly and publicly stated that there are not enough men in

5

the English Department.

35.     After the decision, many hiring committee members expressed disappointment that Defendants hired the less qualified male instead of Ms. Gelderloos.  For example, upon receiving word about the hire, Ms. Shepherd wrote in an email, "What happened to our first choice????" and "I'm pissed about this hire."  Ms. Krantz added, "Another unhappy department member . . ." and "I'm heartsick."  Finally, Ms. Kissel wrote "It is frustrating . . . I mentioned the issue to Stuart [the Previous V.P. for Instruction], and he noted that he could see that Stephanie would have a hard time getting hired by Bill [Abernethy]."

36.     Ms. Gelderloos was significantly more qualified for the position than the male candidate hired.

37.     For example, the hire's cumulative undergraduate GPA was 2.563, while Ms. Gelderloos graduated Magna Cum Laude with a 3.70 GPA.  Similarly, the hire's Master's GPA was 3.80 while Ms. Gelderloos earned a 3.97.

38.     Ms. Gelderloos also received significantly higher ratings from the interview committee.  She was the only candidate to score a 5 out of 5 on the ENG FT Review Sheet.  The male candidate, by comparison, scored a 3.

39.     Defendants gave preference to the male candidate not because he was the most qualified candidate but because he is male.

40.     WCC's refusal to hire Ms. Gelderloos was substantially motivated by the fact that she is a female.

41.     In response to the EEOC's proposals following the cause finding, WCC has refused to reinstate or appoint Ms. Gelderloos to the position that she should have held but for the illegal discrimination.

6

## COUNT I – Title IX, 20 U.S.C. §§ 1681–88
## DISCRIMINATION ON THE BASIS OF SEX

42.　　Under Title IX of the Education Act Amendments of 1972 (20 USC §§ 1681–88), an educational institution may not exclude any person, on the basis of sex, from participation in any education program or activity receiving federal financial assistance, or deny benefits on the basis of sex or subject that person to sex-based discrimination. This includes employees as well as students.

43.　　Defendants operate an education program receiving federal financial assistance.

44.　　Ms. Gelderloos was subjected to discrimination on the basis of sex when she was denied an employment opportunity because she is female.

45.　　As a result, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT II – Elliott-Larsen Civil Rights Act, MCL 27.2101
## DISCRIMINATION ON THE BASIS OF SEX

46.　　Plaintiff hereby realleges and incorporates the previous paragraphs by reference.

47.　　Defendants' failure to hire Ms. Gelderloos was motivated, in substantial part, by the fact that Ms. Gelderloos is female.

48.　　As a direct and proximate result of Defendants' discriminatory conduct Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT III – Michigan Constitution, Article 1 § 26
## DISCRIMINATION ON THE BASIS OF SEX

49.　　Plaintiff hereby realleges and incorporates the previous paragraphs by reference.

7

50.     Under the Michigan Constitution, the state (which includes community colleges) "shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting."

51.     In the operation of an entity providing public education, Defendants discriminated against Ms. Gelderloos on the basis of sex.

52.     As a result, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

**COUNT IV – 42 USC § 1983**
**VIOLATION OF EQUAL PROTECTION CLAUSE**

53.     Plaintiff hereby realleges and incorporates the previous paragraphs by reference.

54.     Defendants' actions in refusing to hire Ms. Gelderloos on the basis of her sex abridge her right to equal protection of the laws in violation of the Fourteenth Amendment to the U.S. Constitution.

55.     Defendants' actions were taken intentionally and based on Ms. Gelderloos' sex.

56.     As a result, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court issue an injunctive order for reinstatement of Stephanie Gelderloos to the full-time position and prohibiting WCC from taking sex into account in future hiring decisions, and requests recovery for compensatory and other

damages in an amount to be determined at trial together with costs, punitive damages, exemplary damages, interest, attorney's fees, statutory penalties, and any other relief at law or equity that this Honorable Court deems just and proper.

Respectfully submitted,
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.

s/ David M. Blanchard
David M. Blanchard (P67190)
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
Dated:  August 21, 2014                                     dblanchard@nachtlaw.com


## DEMAND FOR JURY TRIAL

Now Comes Plaintiff, Stephanie Gelderloos, by and through her attorneys, Nacht, Roumel, Salvatore, Blanchard & Walker, P.C., and hereby demands a trial by jury in the above captioned matter.

Respectfully submitted,
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.

s/ David M. Blanchard
David M. Blanchard (P67190)
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
Dated:  August 21, 2014                                     dblanchard@nachtlaw.com